UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THERESE ROHLING PLATT,<br><br>Plaintiff,<br><br>v.<br><br>HOLLAND AMERICA LINE INC., ET AL.,<br><br>Defendants. | CASE NO. 2:20-cv-00062-JHC<br><br>ORDER RE: DEFENDANTS' MOTIONS TO EXCLUDE/MOTIONS IN LIMINE |

Before the Court are Defendants'—Holland America Line - USA, Holland America Line NV LLC, and HAL Antillen NV (collectively, "Holland")—motions to exclude and motions in limine. Dkt. # 54.[1]

The Court RULES as stated within this order.

---

[1] While the motions are noted for May 19, 2023, the parties have fully briefed the motions, and the Court may rule on them.

ORDER RE: DEFENDANTS' MOTIONS TO
EXCLUDE/MOTIONS IN LIMINE - 1

# I

## DISCUSSION

1.  Dr. Veerappan's Testimony about "Partial Seizure Disorder"

Holland moves to exclude any testimony by Dr. Veerappan about his "partial seizure disorder" diagnosis. Dkt. # 54 at 3–7. Holland does not challenge Dr. Veerappan's credentials or qualifications. Rather, Holland argues that the methods by which Dr. Veerappan reached his conclusion were not reliable enough under *Daubert* and Federal Rule of Evidence 702. While a close question, the Court denies the motion to exclude.

Holland makes three arguments about why Dr. Veerappan's diagnosis is unreliable. First, Holland argues that Platt's abnormal EEG results are not independently sufficient to diagnose a seizure disorder or epilepsy, and instead must be corroborated with a CT scan or an MRI. There is some merit to this argument. During his deposition, Dr. Veerappan stated an EEG generally must be clinically correlated with an abnormal CT scan or MRI result before making a diagnosis. *See, e.g.*, Dkt. # 68 at 27, 29. Platt's imaging results were always normal. But it would be odd to read Dr. Veerappan's testimony as implying that an abnormal EEG test *must* be corroborated with an abnormal CT scan or an MRI to make a partial seizure diagnosis. Shortly after the comments that purportedly establish mandatory corroboration through imaging, Dr. Veerappan directly opined that Platt suffers from a partial seizure disorder. *Id.* at 29 (Q: "What's your specific diagnosis related to epilepsy or seizures?" A: "I think she has a partial seizure disorder"). It would be odd for Dr. Veerappan to believe both that (1) corroboration through imaging is strictly necessary, and (2) Platt suffers a partial seizure disorder, despite the lack of corroboration through imaging. Aside from Dr. Veerappan's testimony, the Court lacks information about the standard diagnostic procedure for partial seizure disorders, making it difficult to assess the reliability of Dr. Veerappan's diagnosis. While Dr. Veerappan's testimony

can be used to cross-examine or impeach Dr. Veerappan, at this stage, the Court is uncomfortable second-guessing the diagnosis of Platt's treating physician. *See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) ("Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.")

Second, Holland argues that the "EEG test results upon which Dr. Veerappan relies were not reliable given the various EEG artifact interference." *See* Dkt. # 54 at 4–5, 7. An "artifact" is caused by a patient moving their eyes or moving their body during the exam; this can render the test unreliable, inconclusive, and difficult to interpret. *See id.* at 4. But as with the prior argument, Dr. Veerappan made his partial seizure diagnosis based in part on Platt's EEG results and his interpretation of them. Dr. Veerappan believed the artifacts did not render the tests useless. The Court is unwilling to second-guess Dr. Veerappan's interpretation of the EEG test results without further information. Of course, Holland remains free to cross-examine and impeach Dr. Veerappan on this basis.

Third, Holland argues that Dr. Veerappan's diagnosis is undermined by the recent diagnosis of seizure specialist Dr. Bangalore, who recently opined that "[in] all likelihood, [Plaintiff's] seizures are due to underlying psychiatric disturbance, not an active neurologic issue." Dkt. # 80 at 152. This presents a classic case of two experts who have reached different conclusions. *See Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017) ("Where, as here, two doctors who stand at or near the top of their field and have extensive clinical experience with the rare disease or class of disease at issue, are prepared to give expert opinions," exclusion is not appropriate and "the interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system."). Moreover, Dr. Pliskin has opined that psychogenic seizures and epileptic seizures can co-occur in 7–32 percent

ORDER RE: DEFENDANTS' MOTIONS TO
EXCLUDE/MOTIONS IN LIMINE - 3

of patients. Dkt. # 79 at 32. At trial, Dr. Veerappan may be asked whether he remains committed to his diagnosis given more recent, contrary evidence from a seizure specialist following a thorough evaluation. But this does not necessarily mean that Dr. Veerappan's opinion is inadmissible.

Ultimately, Dr. Veerappan's partial seizure diagnosis appears "[s]haky but admissible." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). This "evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.*

The Court DENIES the motion.

2.  Causation Opinions of Dr. Michael Morse

Holland moves to exclude Dr. Michael Morse's causation opinions. Dkt. # 54 at 7–9. Dr. Morse is a professor of electrical engineering at the University of San Diego. Dkt. # 32 at 48. His research focuses in part on "the effects of electricity when applied to living tissue." *Id.* at 47. Dr. Morse has "studied, consulted, and published in the area of electrical injury and electric shock[,]" with most of his efforts focusing on "understanding human interaction with electrical systems, effects of electricity on the human body[.]" *Id.*

In his report, Dr. Morse states that Plaintiff's symptoms are "[c]onsistent" with an electrical shock incident. Dkt. # 32 at 56. Specifically, Dr. Morse opines that "generalized fatigue, pain, and weakness as well as neuropsych[] type symptoms such as memory and cognitive losses" are "[c]onsistent" with being shocked, and that there is "a class of electrical injury that is known to occur even at lower voltages," including "broad neuropathic path-related . . . symptomology." *Id.* Under a header labeled "Are Mrs. Platt's Symptoms Consistent with the [S]hock [R]eceived," Dr. Morse states: "The answer is a simple and absolute yes." *Id.*

Holland argues that Dr. Morse is an electrical expert, not a medical doctor. Dkt. # 54 at 7–9. Thus, Holland says, Dr. Morse is not qualified to opine about medical causation. *Id.* Platt

opposes the motion and argues that Dr. Morse does not offer specific medical causation opinions, but general causation opinions unspecific to Platt.

The Court finds that Dr. Morse's testimony is not (primarily) directed to medical causation of Platt's injuries *in particular*. Rather, Dr. Morse relies on his background to explain that, as a general matter, electrical shocks can produce certain kinds of injuries. He does not opine (and may not opine) that *Platt*'s injuries were caused by an electrical shock. *See In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879, 907 (C.D. Cal. 2004) (admitting non-medical expert testimony about general causation, but rejecting his specific causation opinions (i.e., causation as to a particular plaintiff)). A jury may find Dr. Morse's testimony helpful as it determines the scope of Platt's injuries and whether the electrical incident caused those injuries. *See Murray v. S. Route Mar., S.A.*, No. C12-1854RSL, 2014 WL 8812682, at *2–3 (W.D. Wash. Oct. 8, 2014) (admitting Dr. Morse's testimony because "his testimony is simply that Mr. Murray's symptoms are of the type one would expect to see after a low-voltage shock."), *aff'd*, 870 F.3d 915 (9th Cir. 2017); *Hollman v. Taser Intern. Inc.*, 928 F. Supp. 2d 657, 669 (E.D.N.Y. 2013) ("Morse's testimony is relevant for explaining the possible effects of electrical injuries on the human body. . . . Defendant's argument that Morse's opinions do not shed insight into Cox's death may be persuasive to the jury, but it is not the role of the Court at this stage to determine which party's experts have the better of the argument.").

But the Court is still concerned about jury confusion. There is a risk that the jury could misinterpret Dr. Morse's testimony as providing *specific* causation opinions. Moreover, the Court is concerned that—to the extent that Dr. Morse discusses Platt's particular symptoms—a jury will take those statements as true. Accordingly, while Dr. Morse may opine as a general matter that an electric-shock incident like Platt's can cause certain symptoms, he may not state or imply that *Platt*'s symptoms *in particular* are consistent with his understanding of the scientific

ORDER RE: DEFENDANTS' MOTIONS TO
EXCLUDE/MOTIONS IN LIMINE - 5

literature.  For example, Dr. Morse should not opine, as he did in his report, that *Platt*'s symptoms "absolute[ly]" are consistent with an electric-shock incident.  Dkt. # 32 at 56.  Instead, he may opine only that electric shocks can cause certain injuries, without mentioning that Platt suffers from any particular symptom.

The Court GRANTS the motion in part and DENIES the motion in part without prejudice, subject to further objection at trial.

3.      Motion to Limit Opinions of Platt's Non-Retained, Treating Physicians

Holland seeks to limit the scope of Platt's non-retained treating physicians to the opinions formed within the scope of each doctor's treatment.  Dkt. # 54 at 9–10.

"[A] treating physician is only exempt from [Federal Rule of Civil Procedure] 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment."  *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011); *see also id.* at 819, 824–25 (holding that when a treating physician is "transformed into an expert offering testimony on matters beyond the treatment rendered," Rule 26 requires the physician to submit an expert report).  Accordingly, a treating physician may generally provide opinions developed during the course of treatment without submitting a written expert report under Rule 26(a)(2)(B).  But to the extent that a treating physician seeks to provide opinions formed *outside* the course of treatment (say, in anticipation of litigation or at the request of the parties), they must provide a written report in accordance with Rule 26.

Neither party disputes these principles, and the parties appear to agree more than they disagree.  For example, Platt states that "[i]f a physician opines as to any issue beyond their personal observation or treatment of the patient or reviews the records of another health care provider in order to formulate an opinion outside of treatment, the physician is outside of the scope of permissible testimony under Rule 26(a)(2)(C), and will be required to file a written

ORDER RE: DEFENDANTS' MOTIONS TO
EXCLUDE/MOTIONS IN LIMINE - 6

report under Rule 26(a)(2)(B)." *See* Dkt. # 67 at 15.  Platt also states that "Plaintiff does not intend to offer testimony aside from that developed in the course and scope of treatment or gleaned from their own diagnoses." *Id.* at 17.  The Court agrees with the parties—Platt's treating physicians may not offer any opinions that were developed outside the course of treatment.

But there is at least some daylight between the parties, so the Court believes further clarification is necessary.

Holland says that "any testimony concerning medical causation must be excluded."  Dkt. # 54 at 10.  But treating physicians can generally provide causation opinions so long as those opinions were formed *during the course of treatment* and not, say, in anticipation of litigation.  *See, e.g.*, *Luttrell v. Novartis Pharmaceuticals Corp.*, 894 F. Supp. 2d 1324, 1333 (E.D. Wash. 2012) ("[A] treating physician may be allowed to opine even as to causation if the opinion was formed during the course of providing treatment, regardless of submission of an expert report."); *Dixon v. Legacy Transp. Sys.*, LLC, No. 215CV01359JADPAL, 2017 WL 4004412, at *3 (D. Nev. Sept. 11, 2017) (admitting treating physician's testimony "as to the treatment she received [and] the causal relation of that treatment to the injuries she suffered in the collision"); *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007) (admitting treating physician's causation opinion because "there is evidence that Dr. Fischer formed his opinions as to causation *at the time that he treated Fielden* and there is no evidence that Dr. Fischer formed his opinion at the request of Fielden's counsel" (emphasis added)); *Goodman*, 644 F.3d at 817 (citing *Fielden* favorably and discussing causation opinions of treating physicians).

But even if a treating physician may provide causation opinions, those opinions must be formed *during the course of treatment* and cannot be formed in anticipation of litigation.  Holland reasonably raises concerns that Platt's treating physicians may try to provide opinions developed outside the scope of treatment.  Platt's expert disclosures state that several treating

ORDER RE: DEFENDANTS' MOTIONS TO
EXCLUDE/MOTIONS IN LIMINE - 7

physicians' testimony "will be consistent with medical records and reports generated or acquired in the scope and practice of his clinic, *records previously produced and obtained by the parties*[,] and medical history available in Plaintiff's electronic files." *See, e.g.*, Dkt. # 49-1 at 10 (emphasis added).

To be sure, this language could be read to imply that Platt's counsel provided the treating physicians with additional documents that they did not otherwise review during treatment. But the disclosure states only that the testimony will be "consistent" with records obtained and produced by the parties (Dkt. # 49-1 at 10), not that external documents were provided to the treating physicians. Moreover, the Court lacks any information about the nature of these documents. As Platt suggests, the records "produced and obtained by the parties" may be coextensive with other records that the treating physicians (permissibly) evaluated during the ordinary course of treatment, such as treatment notes from other providers. Dkt. # 67 at 16–17.

The Court reminds the parties that Platt's treating physicians may not offer *any* opinions that were developed, even in part, outside the scope of treatment. The treating physicians may not offer any opinions that rely on materials that were not relied on during treatment. Nor may her treating physicians offer any opinion developed *after* treatment ended (say, in anticipation of litigation). Moreover, the Court will scrutinize any opinion offered at trial that is not documented in a contemporaneous treatment record, as such an opinion would raise concerns about whether it was developed outside the scope of treatment and in anticipation of litigation. If the Court later determines that a physician's opinion strays beyond an opinion developed during the course of treatment, the Court will consider appropriate action at that time.

The Court GRANTS the motion in part and DENIES the motion in part, without prejudice. The motion is granted insofar as it requests that Platt's treating physicians testify only to opinions developed during the course of treatment. The motion is denied insofar as it seeks to

bar Platt's treating physicians from offering any causation opinion testimony. If at trial Platt's treating physicians attempt to introduce opinions that were not developed during the course of treatment, Holland may object.

4.      Undisclosed or Untimely Disclosed Expert Opinions

Holland moves to exclude any witnesses that were not disclosed according to the timing requirements of Rule 26 and the Court's scheduling order. Dkt. # 54 at 10. More specifically, Holland states that its motion to exclude Dr. Wood is pending, and requests that the Court exclude any additional witnesses disclosed after Platt's January 13, 2023, supplemental expert disclosure. *Id.*

The Court STRIKES the motion as moot. The Court has since granted Holland's motion to exclude Dr. Wood. Dkt. # 85. And Platt has not disclosed any additional witnesses since her January 13, 2023, disclosure.

5.      The Words "Electrocute" or "Electrocution"

Holland moves under Federal Rule of Evidence 403 to prevent the parties, witnesses, and attorneys from describing Platt's electric shock using the words "electrocute," electrocution," or similar words. Dkt. # 54 at 11–13. Holland argues that the word "electrocute," according to most dictionaries, is defined: "[t]o *kill* with electricity" or "[t]o "execute (a person sentenced to death) by means of electricity." *Id.* at 12 (quoting *Electrocute*, THE AM. HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2022)); *id.* (citing other dictionaries).

Platt opposes the motion, noting that some dictionaries define the words to include not only fatal injury, but also severe injury by electric shock. Dkt. # 67 at 20–22. Platt also notes that certain medical billing codes use "electrocution" or "electrocute" to refer to non-fatal electrical injuries, and that several treating physicians use those words in their descriptions of Platt's injuries. *Id.*

ORDER RE: DEFENDANTS' MOTIONS TO
EXCLUDE/MOTIONS IN LIMINE - 9

The Court DENIES the motion. In common usage, the words "electrocute" and "electrocution" do not refer only to fatal electrical shocks. But the Court recognizes that the word may tend to inflame the passions of the jury. Accordingly, while the Court will not categorically bar the parties from using the term, the parties may not use the term in a manner that violates Federal Rule of Evidence 403.

6.  Evidence of Liability Insurance

Holland moves to exclude any evidence relating to Holland's liability insurance coverage under Federal Rule of Evidence 411. Dkt. # 54. Platt offers no meaningful response, stating only that while it has no intention to introduce such evidence, the Court should address any issues relating to admissibility of this type of evidence at trial. Dkt. # 67 at 22.

The Court GRANTS the motion. The Court can think of no scenario in which Holland's liability insurance would be relevant.

7.  Evidence of Offers to Compromise

Holland moves to exclude all evidence relating to settlement or compromise under Federal Rule of Evidence 408. Platt does not oppose the motion. Dkt. # 67 at 22.

The Court GRANTS the motion.

8.  Evidence of the Financial Status of Holland America

Holland moves to exclude all evidence or argument relating to the "wealth or size of Defendant" because such evidence would be irrelevant and unduly prejudicial. Dkt. # 54 at 14. Platt responds that she "does not have any present intention of introducing evidence of Defendants' financial status at trial, the Court should reserve ruling on the issue of admissibility until it is able to do so in the context of the presentation of evidence at trial." Dkt. # 67 at 22.

The Court GRANTS the motion. It is difficult for the Court to imagine a scenario in which such information would be relevant. And such information would likely be prejudicial. The Court may modify this ruling as necessary.

9. Reference to Exhibits Before Admission into Evidence

Holland moves for an order barring the parties from displaying or making reference to any trial exhibit or document not admitted into evidence, including during opening statements. Dkt. # 54 at 14. Platt responds that while she has no intention of referencing exhibits before they are admitted into evidence, the Court should address issues regarding admissibility of this evidence in context at trial. Dkt. # 67 at 23.

The Court DENIES the motion without prejudice, subject to objection at trial.

10. Questioning during *Voir Dire* Regarding Appropriate Level of Damages Award

Holland moves to preclude the parties from asking questions during *voir dire* relating to a juror's comfort with awarding certain damage awards. Holland argues that these questions "would be irrelevant as to whether a particular juror is fair and impartial," and that "[v]*oir dire* in particular is not a proper venue to invite a high damage award by referring to high dollar amounts or inquiring about jurors' views on large verdicts generally." Dkt. # 54 at 14.

Platt responds that "Plaintiff should be permitted to ask the potential jurors questions relating to whether they have any biases or prejudices that would prevent them from awarding a large sum of money if justified by the evidence. Such questions specifically relate to the jurors' ability to be fair and impartial." Dkt. # 67 at 24. Platt also notes that it should be allowed to ask jurors questions about their willingness to award damages for pain and suffering. *Id.*

The Court agrees with Platt that limited questioning relating to damages may be appropriate. *See, e.g., Chavarria v. Mgmt. & Training Corp.*, No. 16-CV-00617-H-RBB, 2018 WL 9538773, at *3 (S.D. Cal. Jan. 22, 2018) ("Plaintiff may, if he chooses, make limited and

appropriate references to potential damages in order to probe any biases potential jurors may have related to civil damages awards."). For example, it may be relevant whether a particular juror is uncomfortable with awarding damages for pain and suffering. But the parties may not discuss particular damage amounts or ranges of damages. Nor may they imply that Platt is, in fact, entitled to a large damages award.

Accordingly, the Court DENIES the motion without prejudice, subject to further objection at trial.

11.  References to Witnesses Not Called by Defense

Holland moves to prevent Platt or her counsel from "suggesting during *voir dire*, trial, or in closing argument, that the defense should have called any particular witness, or that the defense not calling any particular witness establishes or resolves any claim or issue in this litigation." Dkt. # 54 at 14–15. This is because, Holland says, Platt bears the burden of proof on each element of her case. *Id.* Platt's appears to oppose the motion in part, but her argument is difficult to follow. *See* Dkt. # 67 at 25–26.

Without further specificity, this motion in limine is too broad and hypothetical. *See Quintero v. Nat'l R.R. Passenger Corp.*, No. 3:20-CV-05677-TL, 2022 WL 4093120, at *4 (W.D. Wash. Sept. 7, 2022) (reserving ruling on a similar motion in limine).

The Court DENIES the motion without prejudice, subject to further objection at trial.

## II

### CONCLUSION

The Court RULES as stated within this order.

Dated this 13th day of April, 2023.

John H. Chun
United States District Judge

ORDER RE: DEFENDANTS' MOTIONS TO
EXCLUDE/MOTIONS IN LIMINE - 12